UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-62142-ALTMAN/REID

DANIEL L. KLINE,

      Petitioner,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

This cause is before the Court upon Petitioner, Daniel L. Kline's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (the "Petition") challenging the constitutionality of his conviction for burglary of an occupied dwelling, following a jury trial in the state circuit court in and for Broward County, Florida. [ECF No. 1]. He was sentenced to 40-years imprisonment with a 30-year minimum mandatory as a habitual violent felony offender ("HVFO"). [*Id.* at 11–15].

The Petition was referred to the Undersigned by the Honorable Roy K. Altman for a Report and Recommendation. [ECF No. 19]. For the reasons addressed below, it is **RECOMMENDED** that the Petition be **DENIED**.

## BACKGROUND

I.    The Underlying Offense

At trial, Mrs. Sandra Courtney testified that on April 30, 2012, when she returned to home after walking her dogs, she noticed her front door was open. [ECF No. 9-1 at 262-65]. As she entered, she found an unknown individual, later identified as Petitioner, standing in the living room

holding a backpack. [*Id.*]. She gave a very detailed description of the intruder. She described him as white, approximately 5' 7" or 5' 8" tall, with "really short hair," wearing a black t-shirt and shorts, and noticed that he had tattoos on his neck and arms and gold teeth. [*Id.* at 264-65]. Mrs. Courtney asked Petitioner what he was doing in her home. [*Id.* at 266]. He told Mrs. Courtney that he had not stolen anything and proceeded to show her that his backpack was empty. [*Id.* at 266–67]. Shortly thereafter, Petitioner provided Mrs. Courtney with a fictitious name, "Steven," and then left the home. [*Id.* at 267]. Her husband, Mr. Courtney, was at home at the time but was asleep in the bedroom. [*Id.*].

After Petitioner left, Mrs. Courtney woke her husband and asked him if he knew where his wallet was. [*Id.*]. After he noticed the wallet was missing, Mrs. Courtney found Petitioner outside walking away from her home. [*Id.* at 270]. She asked him to stop and return her husband's wallet. [*Id.*]. Petitioner "pat[ted] himself down and open[ed] the backpack again," to show Mrs. Courtney he did not have the wallet. [*Id.*]. The two then returned to the Courtneys' home where Petitioner and Mr. Courtney spoke outside for approximately ten minutes. [*Id.* at 271]. Petitioner gave Mr. Courtney an explanation for being in the house: "[h]e said he was in there because he saw a black guy walk through the yard. And the door was open. So, he just wanted to peek in and see if everything was okay." [*Id.* at 298].

Ultimately, the wallet was discovered inside the home. [*Id.*]. Notwithstanding, the wallet, as well as other items in the home, including a laptop and printer, had either been shifted or moved from their normal location while Petitioner was in the home. [*Id.* at 271–72]. Mrs. Courtney testified that her husband always left his wallet near the laptop computer and always left the laptop computer open because it was broken, and they were concerned that the wires would be cut if they attempted to close it [*Id.* at 268]. She noticed that the laptop computer had been closed. [*Id.*].

The Courtneys did not contact law enforcement because Petitioner did not take any of their property and they "didn't want any more trouble." [*Id.* at 272–73]. The Courtneys did, however, subsequently install a security system on their property. [*Id.* at 273]. Approximately a week after the incident, one of the Courtneys' dogs set off the newly installed security alarm. [*Id.* at 274]. Law enforcement arrived at the Courtneys' home in response. [*Id.*]. Mrs. Courtney mentioned to the responding officers what had occurred approximately one week earlier. [*Id.*]. Afterwards, Mrs. Courtney met with a Detective named Robert Janzer to discuss the incident. [*Id.* at 275].

During Petitioner's trial, Detective Janzer testified that Mrs. Courtney provided a statement regarding the April 30, 2012, incident. [*Id.* at 323–24]. He presented her with a photograph line-up from which she identified Petitioner as the individual who broke into her home. [*Id.* at 321]. Several days later, Detective Janzer met with Mr. Courtney who also identified Petitioner as the perpetrator of the break-in. [*Id.* at 324–25]. Following meeting with the Courtneys, Detective Janzer arrested Petitioner. [*Id.* at 325–26]. Upon being told he was arrested and the charge, Petitioner stated that "he is glad he got caught," and that the "Roxy's got him," referring to the street name for Roxicodone, a painkiller. [*Id.* at 326–27].

II.  State Court Procedural History

Petitioner was charged by Information with burglary of an occupied dwelling in violation of Fla. Stat. 810.02(1) and 810.02(3)(a). [ECF No. 8-1 at 6]. Prior to trial, Petitioner rejected the State's plea offer of 8 years' imprisonment and designation as a habitual offender. [ECF No. 9-1 at 23–27]. At trial, the verdict form gave the jury the options of finding Petitioner guilty of burglary of an occupied dwelling, or guilty of trespass in a structure as a lesser included offense, or not guilty. [ECF No. 8-1 at 9]. The jury found Petitioner guilty of burglary of an occupied dwelling. [*Id.*].

Petitioner appealed his conviction to the Florida Fourth District Court of Appeals ("Fourth DCA"). [*Id.* at 26]. Petitioner raised four issues on appeal: (1) the trial "court erred in denying the defense motion for judgment of acquittal as to burglary; (2) "[f]undamental error occurred when the jury was not instructed on the next lesser included offense of theft;" (3) "[f]undamental error occurred in that the instructions allowed a conviction on an invalid legal theory;" and (4) that the HVFO statute Petitioner was sentenced under is facially unconstitutional. [*Id.*]. The Fourth DCA affirmed the conviction and sentence without written opinion on July 27, 2017. [*Id.* at 78]. The mandate issued on August 25, 2017. [*Id.* at 80].

On August 27, 2018, Petitioner filed a Fla. R. Crim. P. 3.850 motion for postconviction relief in which he alleged eight grounds for relief based upon ineffective assistance of counsel. [*Id.* at 82]. He alleged trial counsel failed to: (1) adequately argue Petitioner's motion for judgment of acquittal; (2) argue that the verdict was contrary to the greater weight of the evidence; (3) move to suppress eyewitness identification of Petitioner; (4) sufficiently advise Petitioner regarding the State's 8-year plea offer; (5) present "psychological fact evidence" before trial; (6) request a jury instruction on the lesser-included offense of theft; and (7) raise the issue of Petitioner's competency. He also argued that the cumulative effect of these errors prejudiced him. [*Id.*]. The State responded on December 5, 2018. [*Id.* at 115].

The trial court denied Petitioner's 3.850 motion on December 11, 2018, stating that it had relied upon the reasoning set forth in the State's Response. [*Id.* at 147]. The Fourth DCA affirmed the trial court's decision on January 9, 2019, per curium [*Id.* at 202], and the mandate issued on August 23, 2019. [*Id.* at 204].

III.   <u>The Instant Petition</u>

Petitioner initiated the instant 28 U.S.C. § 2254 federal habeas Petition on August 26, 2019.

[ECF No. 1]. In the Petition, which almost verbatim mirrors Petitioner's 3.850 motion, he raised

the following seven claims:

> **I(A)**: counsel was ineffective for failing to adequately argue Petitioner's motion for judgment of acquittal;
>
> **I(B)**: counsel was ineffective for failing to argue that the verdict was contrary to the greater weight of the evidence;
>
> **I(C)**: counsel was ineffective for failing to move to suppress eyewitness identifications of Petitioner;
>
> **I(D)**: counsel was ineffective for failing to sufficiently advise Petitioner regarding the State's 8-year plea offer;
>
> **I(E)**: counsel was ineffective for failing to request a jury instruction on the lesser-included offense of theft;
>
> **II**: counsel was ineffective for failing to raise the issue of Petitioner's competency; and
>
> **IV**[1]: Petitioner was prejudiced by the cumulative effect of counsel's errors.

*See generally* [*Id.*].

## **<u>DISCUSSION</u>**

**I.   Timeliness**

Before discussing the merits of Petitioner's claims, the Court must first determine whether

they are timely raised. As the State acknowledges, and as explained below, the Petition was timely

filed.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs petitions

for writ of habeas corpus brought under 28 U.S.C. § 2254. S. 735, 104th Cong. § 102-108 (1996).

---

[1] The Petition omits issue 5 claim regarding "psychological fact evidence."

*See Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998) (per curiam). The AEDPA imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). Specifically, relevant to this case, the AEDPA provides that the one-year limitations period shall run from "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See Id*.

The Eleventh Circuit has held the one-year limitations period begins to run ninety days after the state appellate court affirms a petitioner's conviction. *Chavers v. Sec'y, Florida Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006). The limitations period is tolled, however, for the time during which a properly filed application for post-conviction or other collateral review is pending in the state court. *See* 28 U.S.C. § 2244(d)(2). Consequently, if Petitioner sat on any claim creating time gaps in the review process, the one-year clock would continue to run. *Kearse v. Sec'y, Fla. Dep't of Corr.*, 736 F.3d 1359, 1362 (11th Cir. 2013).

Here, on Petitioner's direct appeal, the Fourth DCA affirmed the trial court's decision on July 27, 2017. [ECF No. 8-1 at 78]. Since Petitioner did not seek further review, his conviction became final on October 25, 2017, 90-days after the Fourth DCA affirmed his conviction. Petitioner filed his 3.850 motion on August 27, 2018, thereby tolling the AEDPA statutory clock. [*Id.* at 82]. Between the time Petitioner's conviction became final and the 3.850 motion was filed, 306 days of untolled time passed. The time in which Petitioner could bring a federal habeas petition did not begin to run again until August 23, 2019, when the Fourth DCA issued the mandate on its affirmance of the trial court's denial of Petitioner's 3.850 motion. Petitioner filed his federal habeas petition three days later on August 26, 2019. [ECF No. 1]. Consequently, only 309 days of untolled time had passed from when Petitioner's state conviction became final. As such, the Petition was timely filed.

## II.     Exhaustion

Next, in addition to requiring the timely filing of habeas claims, consistent with federal deference to state court determinations, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court, unless he first properly raised the issue in state courts." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (internal quotations omitted). Issues raised in a federal habeas corpus petition must have been "fairly presented" to the state courts and thereby exhausted in state court prior to their consideration on the merits in federal court. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *see also* 28 U.S.C. § 2254(b), (c); *Mauk v. Lanier*, 484 F.3d 1352, 1357 (11th Cir. 2007). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. *Baldwin v. Reese*, 541 U.S. 27 (2004). Further, exhaustion requires review by both the state appellate and post-conviction courts. *See Mason v. Allen*, 605 F.3d 1114, 1119–20 (11th Cir. 2010); *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1343 (11th Cir. 2005).

A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard v. Connor*, 404 U.S. 270, 275–77 (1971). To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Jimenez v. Fla. Dep't. of Corr.*, 481 F. 3d 1337, 1342 (11th Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the

federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Here, Petitioner asserted the seven grounds for relief put forth in his federal habeas petition in his 3.850 motion. In the motion, Petitioner exclusively raised ineffective assistance of counsel claims. In these claims, Petitioner cited to *Strickland v. Washington*, 466 U.S. 668 (1984). As the State acknowledges in raising *Strickland*, Petitioner "made the federal nature of his claims apparent to the State court." [ECF No. 7 at 7]. Further, as Petitioner appealed the trial court's denial of the 3.850 motion, the seven grounds for relief asserted in the instant federal habeas petition were exhausted in the state courts.

### III.    Merits

"The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 420 (2014).

In reviewing a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. See *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). A federal court may not grant habeas relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011); *Rimmer v. Sec'y, Fla. Dep't*

*of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017), *cert. denied Rimmer v. Jones*, 138 S. Ct. 2624 (2018). As a result, the statute imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. See *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *Lee*, 726 F.3d at 1192 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "A state court decision involves an unreasonable application of clearly established federal law if the state court correctly identifies the governing legal principle from the relevant Supreme Court decisions 'but unreasonably applies it to the facts of the particular case.'" *Id.* at 1192 (internal quotations omitted).

In sum, to be entitled to federal habeas corpus relief, a petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 1192 (quoting *Harrington*, 560 U.S. at 101–02).

If, however, the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of Petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

The review of Petitioner's ineffective assistance of counsel claim turns on whether the state court reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984). "To succeed on an ineffective-assistance claim under *Strickland*, the § 2254 petitioner must show that his Sixth Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense." *Thomas v. Sec'y, Dep't of Corr.*, No. 17-11357-B, 2018 WL 11303563, at *4 (11th Cir. July 31, 2018) (citing *Strickland*, 466 U.S. at 687, 697). Importantly, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A § 2254 petitioner must establish prejudice through demonstrating by a "reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694.

"Because judicial review of counsel's performance already 'must be highly deferential,' a federal habeas court's review of a state court decision denying a *Strickland* claim is 'doubly deferential.'" *Thomas*, 2018 WL 11303563, at *4 (citing *Cullen v. Pinholster*, 653 U.S. 170, 189–90 (2011)). "In sum, the pertinent inquiry under § 2254(d) is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* (internal quotations and citation omitted).

Finally, it is well settled that a petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all facts necessary to demonstrate a constitutional violation. See *Fillmore v. Perry*, 163 F. App'x 819, 820 (11th Cir. 2006) (citing *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)).

**Ground I(A)**

Petitioner contends counsel rendered ineffective assistance because he failed to "adequately lodge and argue [Petitioner's] motion for judgment of acquittal." [ECF No. 1 at 27]. Specifically, Petitioner contends that although "[t]here is no doubt that [he] entered the Courtney's (sic) home without their consent … there is nothing which suggests that [he] had any intent to commit a crime therein," and thus did not have the requisite intent to be found guilty under Florida's burglary statutes. [*Id.* at 28]. Similarly, Petitioner also argues that counsel failed to argue that mere possession of a backpack while Petitioner was in the Courtneys' home is insufficient to "prove[] that [he] ever intended to use the backpack to perpetrate any crime." [*Id.* at 29].

The state post-conviction court rejected this claim. As set forth in the State's Response to Petitioner's 3.850 motion, which the state postconviction court incorporated into its order denying the 3.850 motion, "[t]he State proved its case through direct and circumstantial evidence the [Petitioner] entered the home with the intent to commit a crime." [ECF No. 8-1 at 134]. As the State noted, Petitioner was charged under Florida Statute §§ 810.02(1) and (3)(a) which defines burglary as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." [*Id.* at 134]. The State pointed out that the evidence supporting intent was strong: "[t]he Courtney[]s identified the [Petitioner] as the one who had been in their home … Mr. Courtney's wallet, a laptop computer, and the printer were moved … [Petitioner] carried a backpack and gave a false name … [and] Petitioner told Detective Janzer he was glad he got caught." [*Id.* at 135].

Despite the strength of this evidence, the State noted that "[t]rial counsel argued eloquently and presented case law," when he moved for judgment of acquittal. [*Id.*]. The State asserted, however, that given the weight of the evidence against Petitioner, the motion for judgment of

acquittal was futile. [*Id.*]. The State posited, however, that "[d]efense counsel is not ineffective [under *Strickland*] for making a 'futile argument.'" [*Id.*] (citing *Gordon v. State*, 863 So. 2d 1215, 1223 (Fla. 2003)).

The postconviction court's[2] conclusions are well-reasoned, supported by case law and the record, and were neither contrary to federal law or an unreasonable application of federal law. The record clearly demonstrates that trial counsel raised the issue of Petitioner's lack of intent to commit a crime in the Courtneys' home during the motion for judgment of acquittal. In fact, nearly the entirety of the argument revolves around this contention. Trial counsel raised numerous arguments demonstrating that there was insufficient evidence to show Petitioner intended to commit a crime in the Courtneys' home. *See generally* [ECF No. 9-1 at 334–39]. Further, trial counsel argued that under Florida law the sort of circumstantial evidence the State relied upon was insufficient to demonstrate Petitioner had the intent to commit burglary, and as such, the only crime that occurred was a simple trespass. [*Id.*]. The argument was in fact preserved for review on direct appeal.

As the postconviction court noted, despite the small likelihood of success, trial counsel adequately argued the motion for judgment of acquittal. The State correctly points out that trial counsel's argument did not sway the court to grant the motion does not render his assistance ineffective. *See Waters v. Thomas*, 46 F.3d 1506, 1522–23 (11th Cir. 1995) (noting that trial counsel "cannot be faulted simply because he did not succeed") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1289 n.12 (11th Cir. 1984) (superseded by statute on other grounds)).

---

[2] In the order denying Petitioner's 3.850 motion, the state postconviction court provided that Petitioner's "Motion for Post-Conviction Relief … is hereby **denied**, for [the] reasons set forth in the State's Response, which are incorporated by reference herein." [ECF No. 8-1 at 151] (emphasis in original). As such, any reference in this Report to the reasoning or explanation made by the "postconviction court," will be citing to the State's Response to Petitioner's 3.850 motion, unless indicated otherwise.

The state court's decision to deny the claim was neither contrary to or an unreasonable application of clearly established federal law.

**Ground I(B)**

In claim I(B) Petitioner similarly contends that trial counsel failed to argue that the verdict was contradicted by the trial evidence. [ECF No. 1 at 29–30]. Petitioner asserts that his "behavior and actions do not show that he had any intent to commit a crime when he was in the Courtney residence." [*Id.* at 29]. As Respondent notes, Petitioner "appears to be asserting that trial counsel was ineffective for failing file a motion for a new trial on the basis that the verdict was contrary to the greater weight of the evidence." [ECF No. 7 at 12–13].

This claim fails for much of the same reason claim I(A) fails: the weight of the evidence. As the state court acknowledged, trial counsel strenuously argued the evidence did not support a finding of intent to commit burglary. [ECF No. 8-1 at 133–35]. In addressing this argument, the postconviction court noted this argument fails for the same reason Petitioner's motion for judgment of acquittal did: the strength of the evidence and the State's case. [*Id.* at 135–36].

To the extent, however, Petitioner's argument here was meant to address a motion for a new trial, trial counsel did in fact file a motion for new trial. [ECF No. 8-1 at 206]. In the motion trial counsel argued that "[t]he fact that [Petitioner] had entered the residence without permission of the homeowners, standing alone, was insufficient to prove his intent to commit theft." [*Id.*]. Counsel further argued that given the circumstantial evidence the State presented was insufficient to prove Petitioner's guilt beyond a reasonable doubt the court was "obligated to consider this evidence in determining the grounds for new trial, and in finding the verdict contrary to the law or weight of evidence." [*Id.* at 207–08]. Trial counsel cannot be said to have been ineffective for

failing to argue the verdict was contradicted by the State's proffered evidence, when he did just that. Consequently, this claims necessarily fails.

**Ground I(C)**

Next, Petitioner argues defense counsel provided ineffective assistance of counsel by failing to move to suppress or to move *in limine* "with regards to the in-court and out-of-court identification of [Petitioner] as the perpetrator in this case." [ECF No. 1 at 30]. In evaluating this issue, Petitioner says the Court should consider two questions: (1) "whether a Motion to Suppress the misidentification or limit the misidentification would have been well taken;" and (2) "whether defense counsel provided ineffective assistance of counsel by failing to object to the ID testimony and evidence and if [Petitioner] suffered *Strickland* 'prejudice' as a result thereof." [*Id.* at 31]. The answer to both of these questions is: no.

As the postconviction court noted, the entirety of the record clearly indicates Petitioner's identity was not at issue. To the contrary, his identity was apparent. Petitioner's identity was so clearly established, that the postconviction court averred that it was "stymied by this allegation as even [Petitioner] acknowledged in his [3.850] motion 'there is no doubt that [Petitioner] entered the Courtney[s'] home without their consent.'" [ECF No. 8-1 at 137]. The postconviction court explained that Petitioner was observed at an extremely close distance by both Mr. and Mrs. Courtney, and thus, there was no substantial likelihood of misidentification. [*Id.*]. In fact, Mrs. Courtney observed Petitioner's "height, his short hair, what he wore, his gold teeth, and his tattoos…. [and the] record shows [Petitioner's] appearance is unique and unforgettable." [*Id.*]. Thus, the postconviction court reasoned, that even if identity were at issue, there is nothing in the record to indicate that Detective Janzer employed an unnecessarily suggestive procedure to obtain the out-of-court identification from the Courtneys. [*Id.* at 137–38]. Given all of this, the

postconviction court concluded it was not error for trial counsel to stipulate that Petitioner was the intruder. [*Id.*]. Rather, it appears to have been a reasonable trial-strategy that comports with professional norms and the unique facts of the case. [*Id.*].

Trial counsel's decision not to challenge the identification evidence—which, as the record reflects, was quite apparent—was a reasonable strategic decision given the facts of the case. As the postconviction court stated "[t]he issue for the fact-finders to determine was not was [Petitioner] in their home, but why was he there?" [*Id.* at 138]. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S at 690-91.

Further, in light of the clear evidence and Petitioner's own admission that he was in the victims' home, Petitioner cannot be said to have been prejudiced by trial counsel's choice to forego such a weak argument. The state court's rejection of this claim was not contrary to or an unreasonable application of federal law.

**Ground I(D)**

In claim I(D), Petitioner alleges trial counsel was ineffective for failing to adequately advise him regarding the State's 8-year plea offer and the potential consequences of his failure to accept it. [*Id.* at 31–32]. Petitioner asserts that trial counsel "misadvised [him] concerning the strengths and weaknesses of the State's case," and had he been properly advised he would have accepted the plea offer. [*Id.*]. Additionally, Petitioner contends that although the State's 8-year plea offer was in fact communicated to him, "his defense counsel did little or nothing to fully explain [his] exposure to life imprisonment and the likelihood that he would be convicted based upon the evidence." [*Id.* at 32]. Had he been adequately advised, Petitioner alleges he "unquestionably" would have accepted the plea offer. [*Id.* at 33]. Lastly, Petitioner avers that there

are statements trial counsel made to him in private meetings regarding the nature of his case that led him to reject the plea offer. [*Id.* at 34–35]. Petitioner contends that because these conversations are "not refuted by the Record, an evidentiary hearing need be conducted so that [present] defense counsel can explain the advice/mis-advice provided to [Petitioner]." [*Id.* at 35].

Given that "plea bargains have become so central to the administration of the criminal justice system … defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). If a defendant alleges he or she were deprived of effective assistance of counsel in considering whether to accept a plea offer, the defendant "must show that but for the ineffective assistance of counsel there is a reasonable probability that … the defendant would have accepted the plea." *Id.* at 164; *see also Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013) (noting that for a defendant "to establish prejudice, the defendant must allege and prove a reasonable probability … [that] he or she would have accepted the offer had counsel advised the defendant correctly").

As with the previously addressed claims, and despite Petitioner's assertion to the contrary, this argument is refuted by the record. As the postconviction court found, the trial court conducted an extensive colloquy regarding the 8-year plea offer. [ECF No. 8-1 at 138–39]. During the colloquy the State prosecutor told both Petitioner and the court of the 8-year plea offer, and that based upon the charges brought and Petitioner's "violent career criminal qualification" Petitioner

faced a maximum of a 40-year sentence with a minimum mandatory of 30 years. [ECF No. 9-1 at 24]. In fact, trial counsel, on the record, acknowledged that "[Petitioner] is looking at a minimum mandatory of 30 [years]," and then asked the court for permission to speak with Petitioner again "now that he has heard what was put on the record." [*Id.*]. After Petitioner met with trial counsel, the court asked, among other things, whether he had "enough time to talk to [his] attorney," whether he was "satisfied with the services of [his] lawyer," whether the rejection of the State's offer was made freely, voluntarily, and knowingly, whether he fully understood the possibility of being sentenced as an HVFO, the consequences stemming therefrom, and whether he still wanted to reject the plea offer. [*Id.* at 26–27]. Petitioner answered in the affirmative to all of these questions. [*Id.*].

The state postconviction court concluded this colloquy, especially in the context of Petitioner's meeting with trial counsel after hearing again in open court the plea offer and the sentence he would receive if convicted, demonstrates the State's plea offer was communicated to Petitioner, that he was advised as to the possible maximum sentence he was facing, and was made aware of the significance of his choice to reject the plea. [ECF No. 8-1 at 138–39]. As such, it concluded Petitioner was not deprived of effective assistance of counsel regarding the plea offer. Further, the postconviction court noted Petitioner, despite his contention to the contrary, had been in prison before, and was familiar with the plea-bargaining process as he had "accepted pleas before and has been sentenced to prison" in prior state cases. [*Id.* at 139]. The postconviction court therefore reasoned, that the trial court's explanation on the record of the maximum penalty Petitioner would face if he rejected the plea offer, the State prosecutor and trial counsel's comments during the colloquy, and Petitioner's familiarity with the plea-bargaining process, indicate Petitioner was apprised of the plea offer and the consequences of failing to accept it. *See*

generally [*Id.* at 138–41]; *see also Frye*, 566 U.S. at 146 (noting that one of the measures trial courts have adopted to prevent "late, frivolous, or fabricated claims [of ineffective assistance of counsel as to a plea offer] after a … trial leading to conviction with resulting harsh consequences…. [is that] formal [plea] offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence"). Thus, the postconviction court concluded that under "the totality of the evidence … there is no reasonable probability [Petitioner] would have accepted the plea offer if trial counsel had advised him differently … [and the] record refutes trial counsel acted in any manner other than that of a competent counsel." [*Id.* at 141].

The postconviction court's rejection of Petitioner's claim counsel was ineffective in advising him regarding the State's 8-year plea offer is supported by the record and law. Where a defendant was made aware of the plea offer, was fully informed by the nature of the charges and potential sentences and did not object to its rejection, his claim of ineffective assistance of counsel regarding the plea offer fails. See *Diaz v. United States*, 930 F.2d 832, 834-35 (11th Cir. 1991); see also *Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009). The state court's decision does not constitute an unreasonable application of Supreme Court precedent or *Strickland*. Petitioner has failed to show the state court's decision to deny him relief was bereft of any reasonable basis. Consequently, the decision is to be afforded deference, and this claim should be denied.

Additionally, no evidentiary hearing is required to parse out the various individual conversations Petitioner had with trial counsel regarding the plea offer. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that a "petitioner is *not* entitled to an evidentiary hearing … when his claims are merely conclusory allegations unsupported by specifics or contentions that

in the face of the record are wholly incredible") (emphasis in original) (internal quotation marks and citation omitted). Here, the record contains sufficient detail to demonstrate that Petitioner was adequately informed of the nature of the offense. While in hindsight, if he had known that the jury would reject his defense that he was merely trespassing or that he had no intent to take the Courtneys' property, Petitioner would surely have accepted the offer; however, this is not the requisite legal standard. Considering the record evidence that both his counsel and the court informed him of the 8-year plea offer and the 30-year mandatory minimum sentence he faced if convicted, and he was given additional time to discuss the matter with counsel prior to making a decision to reject the plea, Petitioner's allegations of trial counsel's deficient performance in advising him on the plea offer were properly rejected. Rather, Petitioner's allegations are insufficient to call into question the clarity of the record to justify conducting an evidentiary hearing on this issue. The rejection of the claim in the state forum should not be disturbed here.

**Ground I(E)**

In ground I(E), Petitioner argues that he was deprived of effective assistance of counsel because of trial counsel's failure "to adequately and properly argue for instruction on a Category I lessor included offense of theft." [ECF No. 1 at 35]. The postconviction court concluded this claim fails for two reasons. First, under Florida law, theft is not a lesser-included offense of burglary. *See Garber v. State*, 684 So. 2d 189, 192 (Fla. 1996); [ECF No. 8-1 at 142–43]. Second, theft was actually inconsistent with the theory of defense that Petitioner was concerned by the "black guy" he claimed he saw entering the home. [ECF No. 8-1 at 143].

In any event, for reasons not fully explained in the record, the trial court *did* instruct the jury regarding the offense of theft. The instruction was as follows:

> To prove the crime of theft, the State must prove the following two elements beyond
> a reasonable doubt: Daniel Kline knowingly and unlawfully endeavored to obtain

or to use the property of Sandra and Robert Courtney. And he did so with the intent to either temporarily or permanently deprive Sandra or Robert Courtney of his or her right to the property or any benefit from it, appropriate the property of Sandra and Robert Courtney to his own use or to the use of any person not entitled to it. And if you find the defendant guilty of theft, you must determine if the state has proven beyond a reasonable doubt whether the value of the property taken was less than $100.

[ECF No. 9-1 at 441–42]. Here, having heard the law and the facts, the jury determined there was sufficient evidence to convict Petitioner of burglary. Moreover, there is nothing in the record to indicate that the jury acted contrary to the law in reaching its decision. *See Strickland*, 466 U.S. at 694 (positing that the reviewing court is to presume that a judge or jury acted according to law). Therefore, Petitioner's claim fails to establish he was deprived of ineffective assistance of counsel.

**Ground II**

Petitioner alleges trial counsel was ineffective because he failed to request a competency evaluation. [ECF No. 1 at 38–39]. It is well settled that "the due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent." *Sheley v. Singletary*, 955 F.2d 1434, 1437 (11th Cir. 1992). "The substantive test for competency is whether a defendant has, at the time of trial, 'sufficient … ability to consult with is lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Raheem v. GDCP Warden*, 995 F.3d 895, 929 (11th Cir. 2021), *cert. denied sub nom. Raheem v. Ford*, 142 S. Ct. 1234, 212 L. Ed. 2d 237 (2022). A Petitioner may establish prejudice from counsel's failure to raise competency to stand trial as an issue where "there was at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial." *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988) (citation omitted). Yet, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present ability to assist counsel or understand the

charges." *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2000). Rather, a Petitioner's "low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs [absent more] is not sufficient to show incompetence." *Pardo v. Sec'y, Fla. Dept. of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009).

The postconviction court concluded that Petitioner cannot establish there was a reasonable probability any pre-trial evaluation would have revealed he was incompetent to stand trial. [ECF No. 8-1 at 131–32]. To the contrary, the record reflects he understood the nature of the proceedings, the consequences of decisions made prior to, and during trial, and was capable of rationally consulting with his attorney. In fact, a post-trial mental evaluation conducted by a Dr. Michael Brannon—one Petitioner's sentencing counsel initiated—resulted in the doctor concluding that "he was competent to proceed." [ECF No. 9-2 at 18]. The postconviction court concluded that "[t]here is no reasonable probability of a different resulted had trial counsel requested a competency evaluation prior to trial, or if sentencing counsel had requested a second opinion." [ECF No. 8-1 at 132].

The only evidence Petitioner proffers to support his contention that trial counsel should have requested a competency evaluation is that he suffers from bi-polar disorder, attention deficit/hyperactivity disorder, and that at the time he entered the Courtneys' home he was suffering from addiction. *See generally* [ECF No. 1 at 38–41]. This is insufficient. As the postconviction court correctly determined, Petitioner merely provides conclusory assertions that trial counsel should have requested a competency hearing, but "has failed to prove he did not have sufficient present ability to consult with his lawyer with a reasonable degree of rational or factual understanding of the proceedings." [ECF No. 8-1 at 132]. Further, the postconviction court also rejected Petitioner's argument that trial counsel was ineffective for not ensuring he was evaluated

by at least two experts, because the Florida Statutes Petitioner cites, Fla. Stat. §§ 916.12(1), (2), only requires such a measure if a court decides to involuntarily commit a defendant. [*Id.*].

Plainly put, Petitioner does little more than provide the conclusory assertion that it was error for trial counsel to fail to request a competency hearing. Crucially, he fails to explain *why* trial counsel should have done so. The postconviction court's rejection of this claims was in no way contrary to, or an unreasonable application of *Strickland*, its progeny, or federal law. As such, the state court's conclusions are entitled to deference, and should not be disturbed here. Consequently, this claim fails.

**Ground IV**

Petitioner's final asserted ground for relief is that the cumulative effect of trial counsel's errors substantially prejudiced him. [ECF No. at 41]. The state postconviction court rejected this same argument, reasoning that since Petitioner has failed on his other claims, he necessarily fails on this one as well. [ECF No. 8-1 at 143–44].

As an initial matter, "[t]he Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims. Although the Eleventh Circuit has noted … that the cumulative effect of several errors that are harmless by themselves could prejudice the defendant's right to a fair trial … [it has also] never expressly recognized a freestanding 'cumulative effect' claim … as cognizable under § 2254." *Ballard v. McNeil*, 785 F. Supp. 2d 1299, 1336 (N.D. Fla. 2011). Rather, the Eleventh Circuit has recognized that where "none of [a petitioner's] individual claims of error or prejudice have any merit … [there is] nothing to accumulate]." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012); *see also United State v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) (noting that "[w]ithout harmful errors, there can be no cumulative effect compelling reversal").

The postconviction court's conclusion that since Petitioner cannot show *Strickland* prejudice for even a single error, it is logically impossible for him to establish prejudice based on the cumulation of non-errors, is in line with established federal law. As Petitioner has failed to meet his burden as to all other claims, he fares no better here.

## EVIDENTIARY HEARING

To the extent that Petitioner requests an evidentiary hearing on the merits of his claims, the request should be denied. In deciding whether to hold an evidentiary hearing "a federal court must consider whether such a hearing could entitle an applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because the applicant would not be entitled to habeas relief, the court is not required to hold an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Upon consideration of the record, because the petitioner can satisfy neither standard, this court should deny a certificate of appealability. Notwithstanding, if Petitioner disagrees, he may bring this argument to the attention of the District Judge in objections.

### RECOMMENDATIONS

Based on the foregoing, it is **RECOMMENDED** that:

1. Petitioner's Federal Habeas Petition, [ECF No. 1], be **DENIED**;

2. Final Judgment be entered in favor of Respondent;

3. No Certificate of Appealability should issue; and

4. That the case be **CLOSED**.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 3rd day of August, 2022.


LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **United States District Court Judge Roy K. Altman;**

**All Counsel of Record**